UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DTE ENERGY TECHNOLOGIES, INC., a
Michigan corporation,

    Plaintiff,

v.

BRIGGS ELECTRIC, INC., a California
corporation,

    Defendant.
_____/

Case No. 06-12347

Honorable Patrick J. Duggan

**<u>OPINION AND ORDER GRANTING DEFENDANT'S MOTIONS TO DISMISS</u>**

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on February 28, 2007.

PRESENT:    THE HONORABLE PATRICK J. DUGGAN
                U.S. DISTRICT COURT JUDGE

DTE Energy Technologies, Inc. ("Plaintiff") initiated this diversity lawsuit after Briggs Electric, Inc. ("Defendant") allegedly breached a contract for the sale of electric generator systems. Plaintiff, in its amended complaint, seeks: (1) damages based on Defendant's alleged failure to pay invoices and (2) declaratory relief prohibiting Defendant from both obtaining incidental or consequential damages and forcing Plaintiff to mediate this dispute in California. Presently before the Court is Defendant's motion to dismiss for lack of personal jurisdiction and improper venue, filed pursuant to Rule 12 of the Federal Rules of Civil Procedure, and alternatively, to transfer. The Court held a

hearing on Defendant's motion on January 25, 2007.

**I.     Background**

In May 2002, Plaintiff, a Michigan corporation with its principal place of business in Farmington Hills, Michigan, began negotiations with Hoag Memorial Hospital Presbyterian ("Hoag") for the sale of electric generator systems to be installed as part of a construction project ("Project") at Hoag's site in Newport Beach, California. On May 6, 2003, Hoag and DPR Construction, Inc. ("DPR") entered into a contract where DPR would act as general contractor for the Project. Subsequently, on August 1, 2003, Hoag informed Plaintiff that it would not be entering into a contract with Plaintiff and "instead directed [Plaintiff] to attempt to negotiate a subcontract for the sale of the electric generator systems with an unspecified subcontractor of DPR." (Am. Compl. ¶8).

Defendant later won the bid as the subcontractor. Part of Defendant's obligation as subcontractor was to perform the electrical work on the Project, which included "procuring and installing the electric generator systems." (Pl.'s Att. 1, Neil E. Mortensen Aff. ¶6)(hereinafter "Pl.'s Aff."). On October 21, 2003, Defendant sent a Purchase Order to Plaintiff. Defendant contends that the Purchase Order constituted an offer. Furthermore, Defendant argues that Plaintiff accepted its Purchase Order on November 10, 2003 when Rick Cole sent an email to Ron Calkins, a representative of Defendant, stating:

> Ron,
>
> Per our discussion.
>
> Rick

(Dft.'s Ex. 6). The e-mail also contained a forwarded message, bearing the subject line "Waukesha extended warranty," from Rick Cole to James Easley, a representative of Hoag. This forwarded message states in relevant part:

> Jim,
>
> We have received our order from Briggs Electric for the three Waukesha engine generator sets. I wanted to take this opportunity to thank you again for allowing DTE to participate on this project. We have assigned a project manager and two engineers to the project and we are completing the submittals now.
>
> The bid documents required that we offer a price for extended warranty which was quoted at $21,000 per year. Waukesha's warranty policy requires that we include the extended warranty coverage at the time we enter our order. I need to know if Hoag is planning to accept the extended warranty and, if so, how to bill the cost.

(*Id.*). Thus, according to Defendant, this forwarded message acknowledging the receipt of the Purchase Order is evidence that Plaintiff accepted the Purchase Order, through its conduct.

Plaintiff submitted an Order Acknowledgment to Defendant on December 4, 2003. (*Id.* ¶7). Plaintiff contends that the Order Acknowledgment and the Standard Terms and Conditions of Sale attached to the Order Acknowledgment should be construed as an offer. (*Id.*). Plaintiff argues that Defendant did not object to the terms of this alleged offer, and Defendant accepted the alleged offer when it sent payment to Plaintiff. (*Id.* ¶¶ 9,11). The Standard Terms and Conditions of Sale attached to the Order Acknowledgment contain the following forum-selection and choice-of-law clause:

> The provisions of this Agreement shall be construed in

> accordance with and governed by the laws of the State of Michigan as applicable to contracts made and performed entirely within that State, and any action thereon may be brought only in a court of competent jurisdiction located in Michigan.

(Resp. Br. Ex.B).

Plaintiff contends that it delivered the electric generator systems and provided other related services at Defendant's request.  Furthermore, Plaintiff argues that Defendant has breached its obligation to pay Plaintiff under the agreement and "owes [Plaintiff] in excess of $880,000 for the generator systems, for related service, and for additional work which [Plaintiff] performed at [Defendant's] request."  (Pl.'s Aff. ¶15).  Rather than paying the amount owed, Plaintiff alleges that Defendant has made a demand to Plaintiff for damages that "purportedly arise out of delays in completion of the Project."  (Am. Compl. ¶20).  Specifically, Plaintiff alleges that "[o]n or about October 6, 2006, [Defendant] allegedly submitted a demand for mediation against [Plaintiff], Hoag, and [the general contractor] with JAMS in California seeking a declaration of the contractual rights and duties of the parties arising out of the same transaction and occurrence of events pled in this Complaint."  (*Id.* ¶40).

Defendant acknowledges that the Order Acknowledgment contains a forum-selection and choice of law clause.  However, Defendant contends that it did not agree to the forum-selection clause.

**II.   Defendant's Motion to Dismiss for Lack of Personal Jurisdiction**

    **A.   Standard of Review**

Defendant's moves to dismiss Plaintiff's complaint based on lack of personal

jurisdiction.[1]  *See* FED. R. CIV. P. 12(b)(2).  When deciding a motion based on Rule 12(b)(2), a district court has at its disposal three procedural alternatives: (1) "it may decide the motion upon the affidavits alone"; (2) "it may permit discovery in aid of deciding the motion"; or (3) "it may conduct an evidentiary hearing to resolve any apparent factual questions."  *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991)(citing *Serras v. First Tennessee Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989)).  "The court has discretion to select which method it will follow . . . ."  *Theunissen*, 935 F.2d at 1458.  Furthermore, regardless of which method the court chooses, it is the plaintiff who "bears the burden of establishing that  jurisdiction exists."  *Id.* at 1458.

If the court determines "that the motion to dismiss for lack of personal jurisdiction can be decided upon [the] written submissions, it 'must consider the pleadings and the affidavits in the light most favorable to the plaintiff.'"  *Serras*, 875 F.2d at 1214 (quoting *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980).  When the court decides on the written submissions alone, "the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal."  *Theunissen*, 935 F.2d at 1458 (citing *Serras*, 875 F.2d at 1214)(emphasis in original).  Moreover, the court in deciding a 12(b)(2) motion on the parties' written submissions alone, "does not weigh the controverting assertions of the party seeking dismissal."  *Id.* at 1459 (citing *Serras* 875

---

[1]To the extent Defendant relies on 28 U.S.C. Section 1391 as a basis for dismissal based on lack of personal jurisdiction, Defendant is wrong.  Section 1391 is a venue statute not a personal jurisdiction statute.  *See* 28 U.S.C. § 1391.

F.2d at 1214).

This Court believes in this case that it is proper to decide Defendant's motion on the written submissions alone. The parties do not dispute whether they entered into a contract; rather, the parties disagree as to the terms of the contract. Furthermore, there is no dispute as to when the relevant documents were sent and what terms were contained in each of these documents. Thus, this Court must determine if Plaintiff has satisfied its burden of making a "*prima facie* showing that personal jurisdiction exists . . . ." *Theunissen*, 935 F.2d at 1458 (citing *Serras* 875 F.2d at 1214)(emphasis in original)**.**

### B.     Applicable Law and Analysis

"A federal court may only exercise personal jurisdiction in a diversity case if such jurisdiction is (1) authorized by the law of the state in which the court sits; and (2) is otherwise consistent with the Due Process Clause of the Fourteenth Amendment." *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003). "Personal jurisdiction comes in two flavors: 'general' jurisdiction, which depends on a showing that the defendant has continuous and systematic contracts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims the plaintiff may have against the defendant, and 'specific' jurisdiction, which exposes the defendant to suit in the forum state only on claims that 'arise out of or relate to' a defendant's contracts with the forum." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997). Plaintiff contends that Defendant consented to personal jurisdiction by way of a forum-selection clause. In the alternative, Plaintiff contends that specific, or limited, personal

6

jurisdiction exists.[2] The Court will address each of these arguments in turn.

### 1.  Consent as a Basis for Personal Jurisdiction

Plaintiff argues that Defendant has consented to personal jurisdiction based on a forum-selection clause in the parties' sales agreement. Under Michigan law, consent is a basis for a court to exercise personal jurisdiction over a non-resident corporation as long as the limitations in Section 600.745 are satisfied. MICH. COMP. LAWS § 600.711. Section 600.745 states in relevant part:

> If the parties agreed in writing that an action on a controversy may be brought in this state and the agreement provides the only basis for the exercise of jurisdiction, a court of this state shall entertain the action if all the following occur:
> (a) The court has power under the law of this state to entertain the action.
> (b) This state is a reasonably convenient place for the trial of the action.
> (c) The agreement as to the place of the action is not obtained by misrepresentation, duress, the abuse of economic power, or other unconscionable means.
> (d) The defendant is served with process as provided by court rules.

*Id.* § 600.745(2).

According to Plaintiff, Defendant consented to personal jurisdiction when it accepted the forum-selection clause in the December 4, 2003 Order Acknowledgment, which Plaintiff contends was the offer. Defendant argues that the Order Acknowledgment was not the offer and contends that the Purchase Order it sent Plaintiff

---

[2]In its amended complaint, Plaintiff alleges: "[t]his Court has jurisdiction over the parties because Defendant Briggs agreed in its contract to litigate this dispute here." (Am. Compl. ¶4). Plaintiff alleges no other basis for personal jurisdiction in its amended complaint. In its brief, however, Plaintiff asserts, in the alternative, that limited personal jurisdiction exists.

on October 21, 2003 was the offer. Once the Court determines which document operated as the offer, it can decide whether the forum-selection clause is binding.

In their briefs and at the hearing held on this motion, the parties refer to Michigan's version of the Uniform Commercial Code ("UCC"). The UCC provides that "[a] contract for the sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." MICH. COMP. LAWS § 440.2204(1). More specifically, "[a]n offer to make a contract shall be construed as inviting acceptance in any manner and by any medium reasonable in the circumstances." *Id.* § 440.2206(1)(a). "As a general rule orders are considered as offers to purchase." *Aaron E. Levine & Co. v. Calkraft Paper Co.*, 429 F. Supp. 1039, 1048 (E.D. Mich. 1976).

Plaintiff argues first that the Court cannot weigh Defendant's assertion that the Purchase Order constituted an offer based on the Sixth Circuit's ruling in *Theunissen v. Matthews*, 935 F.2d 1454 (6th Cir. 1991). *Theunissen* was a tort case in which the court had to decide whether personal jurisdiction existed based on contacts. It did not involve the question of whether personal jurisdiction existed based on a forum-selection clause. Therefore, it is distinguishable. Here, Plaintiff argues that personal jurisdiction exists based on the forum-selection clause. Determining whether the forum-selection clause is part of the contract consists primarily of determining whether the December 4, 2003 Order Acknowledgment was an offer. This does not resolve disputed factual issues. The instant case turns on the legal significance of the Purchase Order and Order Acknowledgment. Thus, this Court need not blindly adopt Plaintiff's conclusory

8

allegation that the Order Acknowledgment was the offer.

In addition, Plaintiff asserts two other reasons why the Purchase Order should not be construed as an offer. First, Plaintiff argues that Defendant did not formally become the subcontractor on the Project until November 5, 2003; thus, the Purchase Order could not have operated as an offer. Second, Plaintiff argues that the Purchase Order is "indefinite, incomplete, and contradictory." (Pl.'s Resp. Br. at 10). This Court disagrees with these arguments. First, the fact that Defendant submitted the Purchase Order before it was formally the subcontractor has no bearing on whether the Purchase Order constituted an offer. Second, the Court does not believe the Purchase Order was "indefinite, incomplete, and contradictory." The Purchase Order contained a quantity, price, and delivery terms. (*See* Dft.'s Br., Ex.4).

This Court believes the October 21, 2003 Purchase Order constituted an offer.[3] The Purchase Order was the initial communication between Plaintiff and Defendant, and it was sent to Plaintiff after Hoag informed Plaintiff that it would need to negotiate a deal with the subcontractor. Furthermore, the Order Acknowledgment references, by number, the Purchase Order and lists the exact price as that listed in the Purchase Order. (Dft.'s Br., Ex. 4). Because the Court believes the Purchase Order was an offer, the Court must now determine the effect of the Order Acknowledgment, and more specifically, whether

---

[3]In its response brief, Plaintiff argues that the Purchase Order "is not the parties' contract." (Pl.'s Resp. Br. at 11). In determining that the Purchase Order was an offer, the Court does not mean to suggest or give the impression that this Purchase Order was "the parties' contract." Instead, the Court is only determining whether the Purchase Order operated as an offer.

9

the forum-selection clause is enforceable against Defendant.

"Michigan courts recognize that '[a] contractual forum selection clause, though otherwise valid, may not be enforced against one not bound by the contract.'" *Metro. Alloys Corp. v. State Metals Indus.*, 416 F. Supp. 2d 561, 565 (E.D. Mich. 2006)(quoting *Offerdahl v. Silverstein*, 224 Mich. App. 417, 420, 569 N.W. 2d 834 (1997)). "It is for Michigan courts to determine in the first instance whether a forum selection clause is contractually binding." *Id.* In deciding whether Defendant is bound by the forum selection clause, the Court is guided by Michigan Compiled Laws Section 440.2207, which is identical to Section 2-207 of the UCC. *Compare* MICH. COMP. LAWS § 440.2207 *with* UCC § 2-207. "[T]he purpose of Section 2-207 is to interpret a contract that has been made, not to determine that one exists." James J. White, *Contracting Under Amended 2-207*, 2004 WIS. L. REV. 723, 723 (2004). As stated above, the parties do not dispute whether a contract for the sale of the electric generators exists; rather, the parties disagree as to whether the forum-selection clause is part of their contract.

Section 440.2207 states in full:

> (1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.
> (2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:
> > (a) the offer expressly limits acceptance to the terms of the offer;
> > (b) they materially alter it; or
> > (c) notification of objection to them has already been

> given or is given within a reasonable time after notice
> of them is received.
>
> (3) Conduct by both parties which recognizes the existence of
> a contract is sufficient to establish a contract for sale although
> the writings of the parties do not otherwise establish a
> contract. In such case the terms of the particular contract
> consist of those terms on which the writing of the parties
> agree, together with any supplementary terms incorporated
> under any other provisions of this Act.

MICH. COMP. LAWS § 440.2207. This section alters the common law "mirror image rule" by establishing a general rule that a written confirmation operates as an acceptance even though its terms are not identical to those contained in the offer.[4] JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE 55-56 (5th ed. 2006). This general rule contains an exception. In order to avoid accepting an offer by sending a written confirmation containing additional or different terms, a party can state that "acceptance is expressly made conditional on assent to the additional or different terms." MICH. COMP. LAWS § 440.2207(1). The Sixth Circuit has stated: "[i]n order to fall within this [exception], it is not enough that acceptance is expressly conditional on additional or different terms; rather, an acceptance must be *expressly* conditional on offeror's *assent* to those terms." *Dorton v. Collins & Aikman Corp.*, 453 F.2d 1161, 1168 (6th Cir.

---

[4] A treatise on the U.C.C. describes Section 2-207 and how it differs from the common law mirror image rule as follows:

> At common law an acceptance had to be a mirror image of the offer. The buyer's form [differing in some respect to the offer] therefore could not be an acceptance; it was a counteroffer. The rigidity of the common law rule ignored the modern realities of commerce. Where preprinted forms are used to structure deals, they rarely mirror each other, yet the parties usually assume they have a binding contract and act accordingly. Section 2-207 rejects the common law mirror image rule and converts many common law counteroffers into acceptances under 2-207(1).

JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE 55-56 (5th ed. 2006).

11

1972)(emphasis in original).[5]

Plaintiff argues that even if the Purchase Order constituted an offer, it expressly rejected the offer in its Order Acknowledgment. Plaintiff contends that the following clause contained in the Standard Terms and Conditions of Sale attached to the Order Acknowledgment is an express rejection:

> 1. Entire Agreement. These Standard Terms and Conditions of Sale, together with the Sale Agreement into which they are incorporated and Schedule 1 thereof (collectively the "Agreement"), set forth and forms the **entire understanding between DTE Energy Technologies, Inc. ("Seller") and Buyer** with respect to the products described in the Sale Agreement. **All prior other and collateral agreements, representations, warranties, promises and conditions relating to the subject matter of this Agreement are superseded by this Agreement. No additions to or variations from these Terms and Conditions shall be binding unless in a writing executed by Seller's President or one of Seller's Vice Presidents and Buyer. If Buyer's purchase order is referenced, it is solely for inclusion of a purchase order number and none of the terms and conditions of any purchase order or other Buyer document shall apply.**

(Pl.'s Ex. B). This Court does not believe this provision amounts to an express rejection under Section 440.2207(1).

As stated above, in order for a written confirmation of an offer to amount to a rejection and/or a counteroffer, the written confirmation must be "*expressly* made conditional on *assent* to the additional or different terms." *Dorton*, 453 F.2d at 1168.

---

[5]*See also* JAMES J. WHITE & ROBERT S. SUMMERS, UNIFORM COMMERCIAL CODE 69 n.38 (5th ed. 2006)(collecting cases interpreting this exception in Section 2-207(1) narrowly).

Furthermore, Section 440.2207 is "intended to apply only to an acceptance which clearly reveals that the offeree is unwilling to proceed with the transaction unless he is assured of the offeror's assent to the additional or different terms therein." *Id.* The provision Plaintiff contends is an express rejection does not contemplate the buyer's assent to the additional or different terms. Rather, it makes any additional or different terms binding with or without the buyer's assent.[6]

Because the Order Acknowledgment was not expressly conditional on Defendant's assent to the additional terms, "[t]he additional terms are to be construed as proposals for addition to the contract." MICH. COMP. LAWS § 440.2207(2). Furthermore, absent the application of a specified exception, the additional terms become part of the contract when the contracting parties are both "merchants."[7] *Id.*

Defendant, invoking one of the specified exceptions pertaining to merchants, argues that the forum-selection clause is an additional term and that it "materially alters" the

---

[6]Even if the Order Acknowledgment was an express rejection, Defendant did not accept the forum-selection clause by merely accepting and paying for the electric generators. *PCS Nitrogen Fertilizer, L.P. v. The Christy Refractories, L.L.C.*, 225 F.3d 974, 980 (8th Cir. 2000)(stating "mere acceptance of and payment for goods does not constitute acceptance of all the terms in the seller's counter-offer")(citing *Ralph Schrader, Inc. v. Diamond Int'l Corp.*, 833 F.2d 1210, 1215 (6th Cir. 1987)).

[7]A "merchant" is:
> a person who deals in goods of the kind or otherwise by his occupation holds himself out as having knowledge or skill peculiar to the practices or goods involved in the transaction or to whom such knowledge or skill may be attributed by his employment of an agent or broker or other intermediary who by his occupation holds himself out as having such knowledge or skill.

MICH. COMP. LAWS § 440.2104(1). "'Between merchants' means in any transaction with respect to which both parties are chargeable with knowledge or skill of merchants." *Id.* § 440.2104(3).

terms of the parties' contract. *Id.* § 440.2207(2)(b). Recently, another court in the Eastern District of Michigan addressed this exact issue. In *Metro. Alloys Corp. v. State Metal Indus., Inc.*, 416 F. Supp. 2d 561 (E.D. Mich. 2006), the defendant, a New Jersey corporation, argued that personal jurisdiction did not exist based on the plaintiff's consent to a New Jersey forum-selection clause set forth on the reverse side of the defendant's "Sales Contract." *Id.* at 564. The court recognized that the determinative issue was whether the plaintiff was bound by the forum-selection clause. *Id.* at 566. After finding that the Michigan state courts had not directly addressed the issue, the Court, taking into consideration the objectives of the UCC and the Michigan courts' policy of looking to interpretations of other jurisdictions to resolve undecided contractual issues, held:

> if faced with the issue, the Michigan Supreme Court would
> rule that a unilateral addition of a forum selection clause to a
> contract governed by the UCC is a material alteration of the
> contract that does not become part of the contract by
> operation of M.C.L. 440.2207(2)(b).

*Id.* at 567 (citing *Meridian Mut. Ins. Co. v. Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999)).

After reviewing the reasoning of the court in *Metro. Alloys Corp.*, this Court concludes that Defendant is not bound by the forum-selection clause. The forum-selection clause was contained in the fine print attached to an Order Acknowledgment sent by Plaintiff after Defendant had submitted an offer. Assuming the Order Acknowledgment operated as an acceptance, which on these facts the Court believes is an interpretation most favorable to Plaintiff and an interpretation that does not take into consideration Defendant's controverted factual assertions, this Court finds that the forum-selection clause at issue in the present case materially altered the parties' contract and is

not enforceable against Defendant. Because the Court does not believe Defendant consented to personal jurisdiction, it must determine whether, as Plaintiff claims in the alternative, limited personal jurisdiction exists over Defendant.

### 2.    Limited Personal Jurisdiction

Plaintiff contends that limited personal jurisdiction exists under Section 600.715(1) of the Michigan long-arm statute. Section 600.715(1) states in relevant part:

> The existence of any of the following relationships between a corporation or its agent and the state shall constitute a sufficient basis of jurisdiction to enable the courts of record of this state to exercise limited personal jurisdiction over such corporation and to enable such courts to render personal judgments against such corporation arising out of the act or acts which create any of the following relationships:
> (1) The transaction of any business within the state.

MICH. COMP. LAWS § 600.715(1). "The 'transaction of any business' necessary for limited personal jurisdiction under § 600.715(1) is established by the 'slightest act of business in Michigan.'" *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002).

At the hearing, Plaintiff identified the following contacts it contends are sufficient for this Court to exercise limited personal jurisdiction: (1) Defendant sent approximately fifteen invoices or change orders to Plaintiff in Michigan; (2) Defendant sent payment to Plaintiff in Michigan; and (3) Plaintiff performed engineering work, needed to install the generators, in Michigan. In its brief, Plaintiff also asserts that Defendant admitted "that there were 'telephone calls between [Defendant] and [Plaintiff] in the State of Michigan.'" (Pl.'s Resp. Br. at 13 (quoting Dft.'s Br. at 5)).

15

Even though the Defendant's contacts may satisfy the "slightest act of business" requirement of Section 600.715(1) of the long-arm statute, this Court must also determine whether jurisdiction exists under the Due Process Clause. *Youn*, 324 F.3d at 417. To satisfy due process the defendant must "'have certain minimum contacts' with the forum state, such that the exercise of personal jurisdiction 'does not offend the traditional notions of fair play and substantial justice.'" *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 150 (6th Cir. 1997)(quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 158 (1945)). The Sixth Circuit applies three criteria to determine whether the exercise of personal jurisdiction comports with due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968).

The question of whether a defendant purposefully availed itself of the privilege of acting in Michigan is "the *sine qua non* for *in personam* jurisdiction." *Id.* at 381-82. This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' fortuitous' or 'attenuated' contacts." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S. Ct. 2174, 2183 (1985). When dealing with an action arising out of contractual obligations, this requirement is satisfied when a party reaches out beyond one state and creates "continuing relationships and obligations with citizens of

16

another state." *Id.* at 472, 105 S. Ct. at 2182.

On the facts presented here, the Court believes that Plaintiff has not made a prima facie showing that Defendant purposefully availed itself of the privilege of acting in Michigan. Plaintiff's claim of limited personal jurisdiction relies primarily on Defendant placing telephone calls, sending payment, and sending change orders to Michigan. The Sixth Circuit has stated that placing telephone calls and sending mail "strike us as precisely the sort of 'random,' fortuitous' and 'attenuated' contacts that the *Burger King* Court rejected as a basis for haling non-resident defendants into foreign jurisdictions." *LAK, Inc. v. Deer Creek Enters.*, 885 F.2d 1293, 1301 (6th Cir. 1989). *Cf. Lanier v. Am. Bd. of Edodontics*, 843, F.2d 901, 911 (6th Cir. 1988)(holding that telephone calls and correspondence directed to Michigan by the defendant, a nationwide organization, were sufficient to exercise personal jurisdiction when the "real object of the business transaction" was to maintain an on-going presence in Michigan). Consequently, Defendant's acts of sending payment and change orders to Michigan and placing telephone calls to Plaintiff in Michigan are insufficient to establish "purposeful availment."

Furthermore, the fact that Plaintiff performed the engineering work in Michigan is also insufficient to establish personal jurisdiction. Here, the "real object of the business transaction," *Burger King*, 471 U.S. at 479, 105 S. Ct. at 2185, was the purchase of three electric generators to be installed in California. Plaintiff merely supplied the electric generators, which were manufactured in Wisconsin and, based on the present record, never physically located in Michigan.

17

Therefore, this Court does not believe that Defendant has purposefully availed itself of the privilege of acting in Michigan. The contacts proffered by Plaintiff are insufficient to establish limited personal jurisdiction under the Due Process Clause.

### III. Defendant's Motion to Dismiss and/or Transfer for Improper Venue

In addition to challenging the Court's exercise of personal jurisdiction, Defendant argues that this action should be dismissed for improper venue.[8] As an alternative to dismissal, Defendant contends that this case should be transferred to the "proper judicial district in California." (Dft.'s Rep. Br. at 8). Because this Court does not believe Plaintiff has made a prima facie showing that personal jurisdiction exists over Defendant, it does not consider these arguments.

### IV. Conclusion

In conclusion, this Court does not believe Plaintiff has satisfied its burden of establishing a prima facie showing that personal jurisdiction exists over Defendant. Even while viewing the evidence in a light most favorable to Plaintiff, it is this Court's opinion that Defendant is not bound by the Michigan forum-selection clause. Furthermore, this

---

[8] In its motion, Defendant cites Rule 12 of the Federal Rules of Civil Procedure as a basis for dismissing a complaint for improper venue. This Court construes Defendant's motion as being brought pursuant to subsection (b)(3) of Rule 12. FED. R. CIV. P. 12(b)(3). Furthermore, Defendant also argues that dismissal is appropriate pursuant to the doctrine of *forum non conveniens*. The Supreme Court has stated that "to the extent we have continued to recognize that federal courts have the power to dismiss damages actions under the common-law *forum non conveniens* doctrine, we have done so only in 'cases where the alternative forum is abroad.'" *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 722, 116 S. Ct. 1712, 1724 (1996)(quoting *Am. Dredging Co. v. Miller*, 510 U.S. 443, 449 n.2, 114 S. Ct. 981, 986 (1994)). Defendant does not argue that this case should have been brought in a jurisdiction outside of the United States. Therefore, the Court does not consider Defendant's arguments with respect to the doctrine of *forum non conveniens*.

Court does not believe Defendant's contacts with Michigan, as reflected by the present record, are sufficient to satisfy the Due Process Clause.

Accordingly,

**IT IS ORDERED**, that Defendant's motion to dismiss is **GRANTED**.

                                    s/PATRICK J. DUGGAN
                                    UNITED STATES DISTRICT JUDGE

Copies to:
Peter W. Waldmeir, Esq.
Todd A. Holleman, Esq.
W. Scott Turnbull, Esq.
Patrick A Facca, Esq.